# IN THE COURT OF APPEALS OF IOWA

No. 20-0361
Filed December 16, 2020

IN RE THE MARRIAGE OF MEREDITH ALEXIS KOESTERS
AND DAVID JOSEPH KOESTERS

Upon the Petition of
MEREDITH ALEXIS KOESTERS,
     Petitioner-Appellee,

And Concerning
DAVID JOSEPH KOESTERS,
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.

David Koesters appeals from the decree dissolving his marriage to Meredith

Koesters. **AFFIRMED AS MODIFIED.**

Stephen Babe of Cordell Law, LLP, Des Moines, for appellant.

Jessica D. Shannon of Baer Law Office, Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

David and Meredith Koesters married in 2010 and divorced in 2019. The district court granted Meredith physical care of the children, subject to visits with David pursuant to a detailed schedule. On David's motion for reconsideration of the visitation schedule, the district court revised a portion of it. The court ordered David to pay spousal support of $1000 per month for thirty-six months.

On appeal, David contends (1) the district court's spousal support award was inequitable and (2) the district court improperly modified the visitation schedule.

## I.   *Spousal Support*

The district court made the following findings on spousal support:

> This was a nine-year marriage, which I would not characterize as either short or long term. Both parties are healthy. Meredith had acquired her teaching degree prior to the marriage; David obtained his college degree during the marriage. Though the parties have some assets to divide, these assets will not materially affect either party's standard of living. David's earning potential as a software developer in the private sector is greater than Meredith's earning capacity as a public school teacher. At least based on this record, neither party is extravagant. . . .
>
> Meredith's claim for spousal support appears to be in part rehabilitative and in part[ ] reimbursement. In this case, Meredith resigned her eight-year teaching position effective following the 2017-2018 school year with David's consent. She was staying at home with the children in October 2018 when the parties separated and she has remained at-home with the children during the pendency of this action. The consequences of this joint decision should not be borne by Meredith alone.
>
> Meredith testified that she has allowed her Iowa teaching certificate to lapse. But there is nothing in this record that supports the finding that renewing her certificate will be difficult, problematic or inordinately expensive. Meredith established a track record at Waukee as a very capable teacher. Furthermore, the parties live in an area of the state where experienced elementary teachers are in demand. More likely than not, Meredith will be able to renew her

teaching certificate and obtain a teaching position in this area, if she chooses to do so, by the fall of 2020. . . .

The evidence supports the finding that Meredith's teaching salary will within the foreseeable future approximate $50,000. David's 2019 income will be approximately $64,000.

These facts justify rehabilitative alimony up to the time when Meredith can return to teaching.

Meredith was working full-time outside the home while David pursued his college degree. David testified that he financed his college education primarily with student loans. . . . It appears from his student loan summary that he owes student loans in the approximate amount of $41,000. The parties agree that these student loans should not be divided as marital property. Thus even if I accept David's testimony regarding this issue, which I do, Meredith was providing substantially more support for the family during this time than was David. Conversely, David is leaving the marriage with this debt.

These facts provide [support for] extending David's spousal support obligation, but in light of the other factors discussed, long-term traditional support would not be justified. David will be ordered to pay Meredith $1000 per month for 36-months as spousal support.

David takes issue with these findings. He contends, "Meredith made no economic sacrifices that directly enhanced [his] future earning capacity." Accordingly, he asserts, reimbursement alimony was not warranted. And, he argues he "never agreed that Meredith could retire indefinitely" and he should not have been "forced to subsidize her desire to be retired at the age of 31 where she [was] not disabled, perfectly capable of being employed, and [could] effectively reenter the teaching profession by the fall of 2020."

Our review is de novo. *See In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). We "will disturb that determination only when there has been a failure to do equity." *Id.*

"Reimbursement spousal support allows the spouse receiving the support to share in the other spouse's future earnings in exchange for the receiving spouse's contributions to the source of that income." *In re Marriage of Becker*, 756

N.W.2d 822, 826 (Iowa 2008). "Rehabilitative spousal support is 'a way of supporting an economically dependent spouse through a limited period of re-education or retraining following divorce, thereby creating incentive and opportunity for that spouse to become self-supporting.'" *Id.* (quoting *In re Marriage of Francis*, 442 N.W.2d 59, 63 (Iowa 1989)). These types of spousal support, together with a third type not at issue here are not "mutually exclusive." *See In re Marriage of Witherly*, 867 N.W.2d 856, 859–60 (Iowa Ct. App. 2015). In some cases, the categories may overlap. *See In re Marriage of Gust*, 858 N.W.2d 402, 408 (Iowa 2015).

The district court thoroughly vetted the pertinent statutory factors governing spousal support. *See* Iowa Code § 598.21(3) (2019). On our de novo review, we find support for the court's detailed fact findings. Those findings justify an award of spousal support, whatever the award is labeled. *See In re Marriage of Matteson*, No. 16-0401, 2017 WL 361999, at *5 (Iowa Ct. App. Jan. 25, 2017) (affirming an award of $1000 per month for thirty months following an eight-year marriage to allow the receiving spouse to "finish her education and give her time to obtain full-time employment"); *cf. In re Marriage of Monat*, No. 18-0884, 2019 WL 1057310, at *2 (Iowa Ct. App. Mar. 6, 2019) ("Rehabilitative is . . . inapplicable because [the ex-wife] needs no re-education or training to obtain employment; she already has her graduate degree and sufficient work experience to reenter the labor market.").

We turn to the duration of the award. Meredith testified that she allowed her teaching license to lapse when she and David decided she "was going to be staying home with [the] kids." She stated she "would need to get the required credits to be able to renew it as well as pay to have it." She would then need to

get a teaching job and pay for daycare. At the same time, she admitted that school districts tended to hire in the spring and she could find a job that would begin in 2020. She also had a relatively short absence from teaching, having resigned in June 2018, four months before separating from David. For these reasons, we modify the dissolution decree to reduce the duration of the $1000 per month spousal support award from thirty-six months to eight months.

The district court pegged changes in David's child support obligation to the beginning and end dates of his spousal support obligation. We modify the child support provisions of the decree to reflect the changed duration of David's spousal support obligation.

## II.    *Visitation*

As noted, the district court set forth a detailed visitation schedule, which included the following paragraph 3:

> a. Every other weekend from Friday at 5:00 p.m., or after school when a child is in school, until Sunday at 5:00 p.m.
> b. Every Tuesday from 5:00 p.m., or after school when the children are in school, until 7:30 a.m. on Wednesday, or until the start of school when the children are in school.
> c. When both children are attending or are eligible to attend kindergarten, David's alternate weekend visitation shall be extended from Friday at 5:00 p.m., or after school when a child is in school, to Wednesday at 7:30 a.m., or until the start of school when the children are in school.

David filed a motion to "amend, enlarge, and reconsider the facts, conclusions, and order, with regard to" the paragraph. *See* Iowa R. Civ. P. 1.904(2). He argued the paragraph restricted him to "a four-overnight visitation schedule per rotating two-week period" and then "jump[ed] to a six-overnight visitation schedule" and subparagraph (c) was unclear on when it "would become effective."

Meredith filed a resistance,

> agree[ing] with David that it seems ambiguous and unlikely that the Court meant to increase the schedule from a 10-4 overnight visitation schedule to a 6-8 overnight visitation upon both children attending kindergarten, as a 6-8 overnight visitation schedule is exceedingly close to shared physical care and the Court found that in this case, shared physical care was not in the best interest of the children.

She asked the court to "clarify that the expanded visitation schedule . . . is in fact, a 9-5 overnight visitation schedule and once in effect, it would **not** include the weekly overnight in subpar[agraph] (b), as a 6-8 overnight visitation schedule would not be in the best interests of the children." David filed a motion to strike Meredith's resistance, arguing it went "beyond the scope of a resistance" in including a "request for relief" and it was untimely. The district court did not rule on the motion to strike, but clarified the cited visitation paragraph as follows:

> The provision of the parenting schedule established in paragraph 3(c) of the decree is hereby deleted and the following substituted in lieu thereof:
> Beginning September 1, 2022, David's alternate weekend visitation shall be extended from Friday at 5:00 p.m., or after school when a child is in school, to Wednesday at 7:30 a.m., or until the start of school when the children are in school. As of this date, David's every Tuesday overnight visitation established in subparagraph (b) is terminated.

On appeal, David contends the court improperly ruled on Meredith's "request for relief." In his view, "If Meredith wished to have the Decree 'clarified,' 'amended,' 'modified,' to request to 'strike' certain items or provisions, or otherwise reconsider said Decree, Meredith was required to file a proper 1.904 motion within 15 days of entry of the Decree." He does not seriously challenge the merits of the court's revised visitation provision, nor could he, given his assertion that the provision was ambiguous.

David filed a proper motion to reconsider the precise paragraph of the decree that is now at issue. The court ruled on the motion, albeit not as David requested. We discern no impropriety in the court's consideration of the motion. We also agree with the court's revision of the paragraph in light of both parties' assertions that the original paragraph was ambiguous. *See In re Marriage of Clevenger*, No. 11-0994, 2011 WL 5868131, at *5 (Iowa Ct. App. Nov. 23, 2011) (agreeing with district court's Rule 1.904(2) ruling regarding visitation and concluding "[t]he visitation schedule in this case [was] neither 'punitive' nor 'restrictive,' and allow[ed] [the father] a substantial amount of time with the children").

## III. *Appellate Attorney Fees*

Meredith requests appellate attorney fees. An award is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007). After considering Meredith's earning capacity relative to David's earnings, we decline her request.

**AFFIRMED AS MODIFIED.**